**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

---

**In re: CCA Recordings 2255 Litigation**,
                          **Petitioners,**

**v.**                                                 **Case No. 19-cv-2491-JAR-JPO**

                                            **(This Document Relates to Case No. 16-
                                            cr-20022-JAR-3, *United States v. Danille
                                            Morris*, and  Case No. 18-2378-JAR,
                                            *Danille Morris v. United States*)**

**United States of America.**
                          **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Danille Morris's Motion to Vacate and

Discharge with Prejudice under 28 U.S.C. 2255, as amended (Docs. 137, 151).[1]  Petitioner filed a

pro se motion alleging that counsel was ineffective and asserts an actual innocence claim.[2]

Petitioner was permitted to amend her motion to add a claim alleging the government violated

the Sixth Amendment by intentionally and unjustifiably becoming privy to her attorney-client

communications.  She asks the Court to reject the government's request to dismiss this action on

procedural grounds, and to find that she has made a sufficient showing to warrant an evidentiary

hearing.  As a remedy, Petitioner asks the Court to vacate her judgment with prejudice to refiling

or alternatively, to reduce her term of imprisonment by approximately 50% and vacate her term

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 16-20022-JAR-3.  Citations prefaced with "*CCA Rec. Lit.* Doc." Refer to filings and entries in this consolidated case, No. 19-cv-2491-JAR-JPO.

[2] Morris also has pending a Motion for Compassionate Release (Doc. 193), which will be addressed in a separate order.

of supervised release.  The matter is fully briefed, and the Court is prepared to rule.  For the reasons explained in detail below, the Court dismisses Petitioner's Sixth Amendment intentional intrusion claim and denies her remaining claims without an evidentiary hearing.

## I.     Procedural History and Background

Petitioner was charged in Count 1 of a superseding indictment with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) & (d) and 2, and in Count 2 with using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, and possessing those firearms in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  These charges stem from the robbery of the First National Bank, located in Stillwell, Kansas.[3]  Count 1 was punishable by up to 25 years' imprisonment, and Count 2 carried a mandatory, consecutive sentence of at least ten years and up to life imprisonment.[4]

Petitioner was detained at Corrections Corporation of America ("CCA") in Leavenworth, Kansas, from March 10, 2016, to April 6, 2017.  She was represented at the time by attorney Scott Toth.

On August 8, 2016, Petitioner pleaded guilty as charged to both counts with no plea agreement.[5]  At the change of plea hearing, the Court asked Petitioner about the fact that there was no written plea agreement between herself and the government.  Petitioner raised the question about whether her plea was an "open plea."  The Court then discussed with Petitioner the difference between pleading guilty without a plea agreement versus proceeding under a plea agreement.  During the exchange, Petitioner said, "I just—I mean, I'm new to this.  I've never been in trouble before, so I'm—I'm just having a hard time.  I mean, he's—my attorney is a

---

[3] Doc. 26.

[4] *Id.* at 4. *See also* 18 U.S.C. §§ 924(c), 2113(a), (d).

[5] Doc. 48.

good attorney.  He's went over it pretty good with me, but I'm having kind of a hard—."[6]  The Court gave Petitioner a chance to consult with her attorney, stating, "You can have a few minutes, you can have a few hours, a few days, a few weeks, whatever you need.  I don't want to—we're not going to rush this.  So if you're not ready, that's fine."[7]

Petitioner consulted with Toth for approximately ten minutes, then indicated that she was prepared to proceed.  Petitioner subsequently acknowledged that she understood she had a right to a jury trial, that she understood the mandatory-minimum consecutive sentence for Count 2 was ten years, and that she was satisfied with the advice and representation her attorney provided her.[8]

The government then provided a factual basis for Petitioner's guilty plea.  Highly summarized, on March 9, 2016, co-defendant Gary Jordan asked Petitioner to be his getaway driver for a bank robbery.  Petitioner drove her 2003 Chevy Tahoe to pick up Jordan and co-defendant Jacob Smith, bringing along her 19-month-old daughter.  Petitioner drove while Jordan and Smith looked for a target, and ended up at the bank in Stillwell, Kansas.  Petitioner "cased" the bank by going inside and pretending to be interested in a job.  She then left the bank and relayed how many employees were working inside the bank to Jordan and Smith.  Jordan and Smith entered the bank and confronted two tellers with handguns and took approximately $15,440 in cash from the tellers while Petitioner waited with the Tahoe running.  After the robbery, Jordan drove the Tahoe while Petitioner and Smith began putting the money into a backpack.  Law enforcement officers located the Tahoe a short time after the bank robbery and initiated a high-speed vehicle pursuit for approximately 21 miles, during which Smith fired

---

[6] Doc. 129 at 9.

[7] *Id.*

[8] *Id.* at 13, 22.

numerous shots at law enforcement from the rear seat, striking a patrol car near the driver's door. Believing that law enforcement could not cross state lines, Petitioner told Jordan to head for Missouri. The three were apprehended after Jordan lost control and wrecked the Tahoe attempting to avoid officers in Kansas City, Missouri. Petitioner was located in the front passenger seat, and her child was in a carseat in the seat directly behind Petitioner. Jordan ran from the Tahoe and tried to carjack another vehicle before being apprehended.

Petitioner stated that she agreed that, if the case went to trial, the government would present evidence as described by the prosecutor. The Court then summarized both counts, and asked Petitioner whether she did what she was charged with in both counts. Petitioner answered, "Yes, ma'am," to both.[9] Petitioner signed a Petition to Enter Plea of Guilty, which was filed that day.[10] In the Petition, she acknowledged that her guilty plea was entered "freely and voluntarily, and . . . my plea of guilty is not the result of any force or threats against me, or of any promises made to me other than those noted in the [P]etition."[11]

After her guilty plea, Petitioner sent a letter to the Court asking for a new attorney.[12] After Toth withdrew, the Court appointed attorney David Guastello, who represented Petitioner at sentencing and on appeal.

The Presentence Investigation Report ("PSIR") calculated Petitioner's base offense level at 20; applied a two-level enhancement under U.S.S.G. § 2B3.1(b)(1) because property of a financial institution was taken; applied a two level-enhancement under § 2B3.1(b)(5) because the offense, including relevant conduct, involved carjacking or attempted carjacking; and applied a

---

[9] *Id.* at 30–31.

[10] Doc. 48.

[11] *Id.* at 5 ¶ 22.

[12] Doc. 54.

six-level enhancement under § 3A1.2(c)(1) because, in a manner creating a substantial risk of serious bodily injury, Petitioner or a person for whose conduct she is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense, or immediate flight therefrom.[13]  After a three-level decrease for acceptance of responsibility, Petitioner's total offense level was 27, which, with a criminal history category of I, resulted in an advisory Guidelines range of 70 to 87 months for Count 1 that was required by statute to run consecutively to the mandatory-minimum 120 month sentence for Count 2.[14]

Petitioner requested a downward variance and counsel advocated for a minor-participant role reduction under U.S.S.G. § 3B1.2, for a total sentence of 150 months' imprisonment.[15]  The government requested an upward variance of 98 months on Count 1, seeking a total sentence of 218 months' imprisonment, based on Petitioner's decision to bring her 19-month old child to a bank robbery, placing the child at serious risk of injury or death.[16]  The Court denied the role reduction objection, declined to grant any variance, and imposed a within-Guidelines sentence of 80 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2, to be run consecutively, for a total of 200 months' imprisonment.[17]

Petitioner filed an appeal with the Tenth Circuit Court of Appeals that raised two issues: the Court's denial of the role reduction under § 3B1.2, and that her sentence was substantially unreasonable.  The Tenth Circuit affirmed.[18]

---

[13] Doc. 90 ¶¶ 46–50.

[14] *Id.* ¶ 90.

[15] Doc. 97.

[16] Doc. 95.

[17] Doc. 104.

[18] *United States v. Morris*, 713 F. App'x 777 (10th Cir. 2017).

Petitioner filed a pro se § 2255 motion on July 19, 2018, claiming ineffective assistance of counsel and actual innocence, but not raising the instant Sixth Amendment intentional-intrusion claim.[19]  The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in this matter on July 17, 2018.[20]  Petitioner was granted leave to amend and on October 25, 2018, amended her § 2255 motion, claiming she is entitled to vacatur of her conviction and sentence or alternatively, reduction of her custodial sentence.

## II.    Discussion

### A.    *Tollett*

Petitioner is one of 39 Petitioners in this consolidated matter who allege pre-plea Sixth Amendment violation claims based on the government's intentional intrusion into their attorney-client communications, and whose proceedings were stayed pending the outcome of a related appeal in *United States v. Matthew Spaeth*, after the Court dismissed Spaeth's claim as foreclosed by the rule in *Tollett v. Henderson*.[21]  In *Tollett*, the United States Supreme Court rejected a pre-plea constitutional challenge where the defendant failed to show that the violation rendered his guilty plea involuntary and unknowing.[22]  These Petitioners, including Ms. Morris, declined the opportunity afforded by the Court to amend their § 2255 motions to seek relief under *Tollett* or to allege a post-plea violation, and acknowledged that by doing so, they rendered their pre-plea Sixth Amendment claims vulnerable to dismissal under the Court's previous rulings.[23]

---

[19] Doc. 137.

[20] Standing Order 18-3.

[21] 411 U.S. 258, 266 (1973); *see Spaeth v. United States*, No. 19-2413-JAR-JPO, Docs. 3, 7, 8; *CCA Rec. Lit.*, Docs. 730, 785, 922.

[22] *Tollett*, 411 U.S. at 266

[23] *CCA Rec. Lit.*, Doc. 848; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context and to show prejudice: "the defendant must show that

On June 12, 2023, the Tenth Circuit Court of Appeals affirmed this Court's ruling in *Spaeth*.[24]  The Tenth Circuit ruled: (1) the carve-out provision in Spaeth's unconditional standard plea agreement did not constitute a waiver of the government's right to raise, or create an exception to, the rule of law in *Tollett*, and because Spaeth did not meet his burden under *Tollett* to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth Amendment challenge;[25] (2) Spaeth's reliance on the per se Sixth Amendment violation rule in *Shillinger v. Haworth*[26] is misplaced because that case did not concern *Tollett*'s guilty-plea situation and "has nothing to do with whether a guilty plea is voluntary or knowing";[27] and (3) *Tollett* precludes Spaeth from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.[28]  The court concluded:

> We abide by several principles that the Supreme Court made transparent 50 years ago.  When a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt.  As a result, we do not assess the merits of pre-plea constitutional claims but instead ask whether ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly.  *Tollett* and its progeny tell us how to answer that question: challengers must show ineffective assistance of plea counsel.  Because Spaeth does not even contend that his counsel performed deficiently, or that such deficient performance prejudiced him by depriving him of a trial right he would have chosen, we conclude that Spaeth's § 2255 motion must be dismissed.[29]

---

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[24] *United States v. Spaeth*, 69 F.4th 1190 (10th Cir. 2023).  The mandate issued August 21, 2023.

[25] *Id.* at 1204–08.

[26] 70 F.3d 1132, 1142 (10th Cir. 1995) (holding a per se Sixth Amendment violation occurs when the government becomes privy to an attorney-client communication because of its purposeful intrusion that is not justified by any legitimate law enforcement interest).

[27] *Spaeth*, 69 F.4th at 1211.  The Tenth Circuit declined to decide "what effect any per se presumption of a Sixth Amendment violation might have in applying the *Hill* prejudice standard—a reasonable probability that the defendant would not have pleaded guilty absent the deficient performance."  *Id.*

[28] *Id.* at 1212–13.

[29] *Id.* at 1213.

The Tenth Circuit's ruling in *Spaeth* compels dismissal of Petitioner's Sixth Amendment intentional-intrusion claim.  Petitioner's Sixth Amendment claim arises from the video recording of two attorney-client meetings that took place at CCA on April 29 and May 16, 2016.  The government had possession of and access to these recordings prior to Petitioner's August 8, 2016 guilty plea.[30]  Petitioner challenges both her conviction and her sentence based on this alleged Sixth Amendment violation by the government.  Like Mr. Spaeth, Petitioner relies on *Shillinger* for this claim and does not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of counsel caused her to enter her plea involuntarily and unknowingly.[31]  Thus, she is also precluded from challenging her sentence based on any alleged pre-plea violation.  Accordingly, this claim is dismissed.[32]

### B.       Ineffective Assistance of Counsel

Petitioner raises three claims that trial and appellate counsel were ineffective: (1) for failing to assert that the mandatory ten-year sentence under § 924(c) did not apply; (2) for failing to object to a two-level enhancement in the PSIR because the offense involved carjacking under § 2B3.1(b)(5); and (3) for failing to allow her the opportunity to enter a plea that was knowing and voluntary.  As discussed below, these claims are without merit.

---

[30] The government had possession of and access to hundreds of hours of video recordings obtained from CCA in a separate criminal matter from May 17, 2016 until August 9, 2016, when it disgorged the videos to the Court.  *See CCA Rec. Lit.*, Doc. 784 at 13; *United States v. Carter*, No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).

[31] As discussed below, Petitioner raises a separate claim that counsel's deficient performance and coercion with respect to her guilty plea caused her to enter her plea involuntarily and unknowingly.  *See infra* at 16–19.

[32] The Court does not reach the government's additional procedural argument that Petitioner's § 2255 motion is procedurally defaulted.

### 1.     Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[33] The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[34]  A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[35]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[36]

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[37]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[38]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[39]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally

---

[33] 28 U.S.C. § 2255(b).

[34] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[35] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[36] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

[37] U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586, 590 (2009).

[38] 466 U.S. 668 (1984).

[39] *Id.* at 688.

competent assistance."[40]  This standard is "highly demanding."[41]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[42]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[43]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[44]

Second, a defendant must also show that her counsel's deficient performance actually prejudiced her defense.[45]  To prevail on this prong, a defendant "must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[46]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[47]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[48]

---

[40] *Id.* at 690.

[41] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[42] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[43] *Strickland*, 466 U.S. at 689.

[44] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[45] *Strickland*, 466 U.S. at 687.

[46] *Id.* at 694.

[47] *Id.*

[48] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

A defendant is entitled to the effective assistance of counsel during plea negotiations.[49] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[50]  To show prejudice in the guilty plea context, the defendant must establish "that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial.'"[51]

Claims of ineffective assistance of appellate counsel are also governed by *Strickland's* standards.  To prove that appellate counsel was ineffective under *Strickland*, a defendant must show "(1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of . . . the appeal . . . would have been different."[52]  Although "[a] claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, . . . counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."[53]  The strength of the omitted issue guides the court's assessment of the ineffectiveness claim.  "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance."[54]  "[I]f the omitted issue has merit but is

---

[49] *Lafler v. Cooper,* 566 U.S. 156, 162–63 (2012).

[50] *Id.* at 163 (internal quotation marks omitted).

[51] *Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

[52] *United States v. Turrentine*, 638 F. App'x 704, 705 (10th Cir. 2016) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[53] *Id.*

[54] *Id.*

not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission."[55]  And "if the issue is meritless, its omission will not constitute deficient performance."[56] As the Tenth Circuit has explained, the omission of a "dead-bang winner" by counsel is deficient performance that may result in prejudice; a dead-bang-winner is "an issue which was obvious from the trial record *and* one which would have resulted in a reversal on appeal."[57]

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[58]  "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[59]

### 2. Application

#### a. Mandatory ten-year sentence under § 924(c)

Petitioner claims that Guastello should have argued that the mandatory-minimum sentence on Count 2 was five years, not ten, and therefore counsel was ineffective for failing to raise the issue both at sentencing and on appeal.

---

[55] *Id.*

[56] *Id.*

[57] *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *United States v. Cook*, 45 F.3d 388, 394 (10th Cir. 1995)).

[58] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[59] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

18 U.S.C. § 924(c) criminalizes using or carrying a firearm during and in relation to a violent crime, or possessing a firearm in furtherance of a violent crime.  The statute carries a mandatory-minimum sentence of five years, in addition to the sentence for the underlying crime.[60]  The mandatory-minimum sentence is increased to seven years "if the firearm is brandished," and ten years "if the firearm is discharged."[61]  The statutory sentencing enhancement of ten years when a firearm is discharged during and in relation to a crime of violence under § 924(c)(1)(A)(iii) requires no proof of intent—the enhancement applies if a gun is discharged, whether intentionally or by accident.[62]

Here, the Superseding Indictment alleged in Count 2 that the defendants "knowingly used, carried, brandished, and discharged" firearms "during and in relation to the robbery of First National Bank in Stillwell, Kansas, charged in Count One, a crime of violence, . . . and possessed those firearms in furtherance of that crime of violence."[63]  It is undisputed that during the flight from the bank robbery, co-defendant Smith fired two handguns at law enforcement officers.  Because a firearm was discharged, a mandatory-minimum sentence of ten years applied.  And at the time of her guilty plea, Petitioner admitted that she understood that she faced a mandatory-minimum sentence of at least ten years.  Thus, Petitioner is incorrect that the five-year mandatory minimum applied to her charged offense, and counsel was not deficient for failing to raise the issue.

Petitioner also claims that counsel was ineffective for failing to object to the six-level enhancement for discharge of a firearm.  She argues that the official victim enhancement under

---

[60] 18 U.S.C. § 924(c)(1)(A)(i).

[61] *Dean v. United States*, 556 U.S. 568, 571–72 (2009) (quoting 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii)).

[62] *Id.* at 572.

[63] Doc. 26 at 2.

U.S.S.G. § 3A1.2(c)(1) does not apply where a defendant was also convicted under § 924(c), resulting in impermissible double counting. That Guideline calls for the increase,

> [i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom.[64]

This argument is without merit. Section 924(c) requires a ten-year mandatory minimum sentence when a firearm is discharged; it does not require proof that anyone was assaulted by the discharge nor that law enforcement was present.[65] By contrast, § 3A1.2 applies where a law enforcement officer was assaulted during the crime or during flight from the crime, whether by firearm or otherwise. That sentencing enhancement does not require that a firearm be discharged.[66] Thus, there is no inappropriate double counting in applying this enhancement to a crime that involved a violation of § 924(c).[67]

Because counsel did not perform deficiently for failing to make objections and arguments at sentencing or on appeal that are legally incorrect, this claim fails.

### b.   Objection to PSIR

Next, Petitioner argues that counsel was ineffective for failing to object to the two-level enhancement for carjacking under U.S.S.G. § 2B3.1(b)(5). Carjacking means the taking, or attempted taking of a motor vehicle from the person or presence of another by force and violence

---

[64] U.S.S.G. § 3A1.2(c)(1).

[65] 18 U.S.C. § 924(c)(1)(A)(iii).

[66] *See United States v. Ford*, 613 F.3d 1263, 1269 (10th Cir. 2010) (recognizing cases from other circuits approving of enhancement where a firearm was displayed to officers, but not discharged).

[67] By contrast, a seven-level specific offense enhancement for discharge of a firearm during relevant conduct to the offense was *not* applied under § 2B3.1(b)(2) because, according to the comment to § 2K2.4, the weapon enhancement is incorporated into the conviction under Count 2, requiring a mandatory consecutive sentence. *See* Doc. 90 at ¶ 48. There is no corresponding incorporation for the enhancement under § 3A1.2. *See* Doc. 90 at ¶ 48.

or by intimidation.[68]  U.S.S.G. § 1B1.3 provides that in the case of a jointly undertaken criminal activity, specific offense characteristic determinations should be determined based on:

> all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or *in the course of attempting to avoid detection or responsibility for that offense*.[69]

In attributing the two-level carjacking enhancement, the PSIR determined that after Jordan crashed the getaway vehicle, he ran on foot and attempted to carjack a nearby vehicle to facilitate his escape.[70]  The PSIR found that this conduct, which occurred after the three defendants led police on an extended high-speed chase during which shots were fired at police officers, was in furtherance of that criminal activity and was reasonably foreseeable to the co-defendants.[71]  The Court adopted the PSIR's recommendation.

Petitioner argues that she was unconscious following the crash of the getaway vehicle, and thus it would not be reasonably foreseeable to her that Jordan would attempt to carjack a vehicle.  In the case of jointly undertaken activity, however, a defendant is responsible for conduct of others that was (1) "within the scope," (2) "in furtherance," and (3) "reasonably foreseeable."[72]  There is no requirement that a defendant assist the co-defendant in the relevant

---

[68] U.S.S.G. § 2B3.1, Application Note 1.

[69] U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added).

[70] Doc. 90 ¶ 49.

[71] *Id.* (first citing *United States v. Cover*, 199 F.3d 1270 (11th Cir. 2000) (upholding carjacking enhancement when defendant was arrested as he exited a bank after a robbery, and an unidentified co-conspirator carjacked a motorist outside the bank to facilitate his escape), and then citing *United States v. Melton*, 131 F.3d 1400 (10th Cir. 1997) (discussing sentencing accountability in the context of the scope of criminal activity involving an arrest, and subsequent activity in which defendant participated in a reverse sting operation)).

[72] U.S.S.G. § 1B1.3, Application Note 3.

conduct, know of the co-defendant's intention to do so, or even be present during the conduct for it to be considered part of the relevant offense conduct.[73]

The Court finds that counsel did not err by failing to object to this two-level enhancement in the PSIR.  Petitioner was aware that the offense involved an armed bank robbery; that she provided the getaway car; and that Petitioner and the two co-defendants led law enforcement on a high-speed chase across the state line, which ultimately ended in the wreck of the vehicle and a continued attempt by Jordan to flee the scene.  Given the violent nature of the bank robbery plan, which continued with an extended attempt to flee in which Smith fired shots at law enforcement officers, Petitioner should have known that an attempted carjacking was reasonably foreseeable.[74]  Thus, the record supports Petitioner meeting the requirements for application of § 1B1.3(a)(1)(B), and it was not error for counsel to fail to object to this enhancement in the PSIR.  She is not entitled to relief on this claim.

### c.      Knowing and voluntary plea

Finally, Petitioner argues that counsel was ineffective for failing to allow her the opportunity to enter a plea that was knowing, voluntary, and intelligent.  "The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty."[75]  "This means a defendant's decision to plead guilty must be 'deliberate and intelligent and chosen from available alternatives.'"[76]  "[C]oercion by the accused's counsel can

---

[73] *Id.*; *see United States v. Kantete*, 610 F. App'x 173, 176 (3d Cir. 2015) (finding that the defendant "need not have been present during the carjacking for it to be considered part of the relevant offense conduct" under U.S.S.G. § 1B1.3(a)(1) (B)).

[74] *See United States v. Martinez*, 342 F.3d 1203, 1209–10 (10th Cir. 2003) (finding that the defendant knew, or should have known, carjacking by bank robbery accomplice was foreseeable where defendant was asked to dispose of a firearm and to provide transportation).

[75] *United States v. McIntosh*, 29 F.4th 648, 655 (10th Cir. 2022) (quoting *Fields v. Gibson*, 277 F.3d 1203, 1212–13 (10th Cir. 2002).

[76] *Id.* (quoting *United States v. Libretti*, 38 F.3d 523, 529 (10th Cir. 1994), *aff'd*, 516 U.S. 29 (1995)).

render a plea involuntary."[77]  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"[78]  "A plea may be involuntary when an attorney materially misinforms the defendant of the consequences of the plea."[79]  Further, "a plea may be involuntary if counsel informs the defendant that he has no choice, he must plead guilty."[80]

Petitioner alleges that (1) counsel's pressure on her to enter a guilty plea resulted in it being coerced and involuntary, and (2) that counsel rendered ineffective assistance in advising her to enter the plea because he refused to consider what she purports to be exculpatory evidence about her participation in the bank robbery.  She notes her hesitancy during her plea colloquy and contends that she was coerced into entering the guilty plea and acted out of fear.  She alleges that she spoke with counsel on numerous occasions about her unwillingness to participate in the bank robbery and provided him with exculpatory statements from the hospital staff, text messages, and camera footage that would have provided proof that she did not aid and abet in the offense.

Petitioner was neither coerced, misinformed, nor told she had no choice but to plead.  The Tenth Circuit has recognized that a "central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests."[81]  "'Advice—even strong urging' by counsel does not invalidate a guilty plea."[82]  Likewise, vigorous urging by counsel based on the belief that it was in his client's

---

[77] *Fields*, 277 F.3d at 1213 (quoting *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988)).

[78] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

[79] *Fields*, 277 F.3d at 1213 (quoting *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990)).

[80] *Id.* (quoting *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996)).

[81] *Id.* at 1214.

[82] *Id.* (quoting *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991)).

best interest to plead guilty does not render a plea involuntary.[83]  Here, Petitioner does not allege that counsel forced or threatened her to plead guilty.

Nor does the evidence described by Petitioner constitute potentially exculpatory evidence, which would be evidence relevant to her guilt.[84]  Instead, evidence regarding her unwillingness to participate in the bank robbery or any domestic abuse issues with Jordan would be mitigation evidence, which would be relevant to her punishment.  Petitioner does not claim that counsel was ineffective for failing to present such evidence at sentencing, nor would such a claim have merit—counsel advocated for a mitigating role in the offense, requesting a decrease at sentencing, both in an objection to the PSIR and in a Sentencing Memorandum.[85]  Guastello urged the Court to consider that Petitioner's role in the offense was minor and motivated by her infatuation with Jordan, and that she needed to get away from him but loved him, which the Court rejected.[86]

Furthermore, this Court conducted a thorough colloquy with Petitioner at the change of plea hearing, which is an "important safeguard that protects defendants from incompetent counsel or misunderstandings," and "insure[s] that defendants understand the consequences of a guilty plea."[87]  The Court acknowledged Plaintiff's hesitancy to enter her plea and advised Petitioner that she should take all the time she needed to make a decision.  After meeting with counsel, Petitioner indicated that she was prepared to proceed, acknowledged that she understood she had a right to a jury trial, that she understood the mandatory-minimum sentence for Count 2

---

[83] *Miles v. Dorsey*, 61 F.3d 1459, 1469 (10th Cir. 1995)

[84] *See* discussion regarding Petitioner's actual innocence claim, *infra*, at 19–20.

[85] Doc. 90 ¶¶ 107–112; Doc. 97.

[86] Doc. 97.

[87] *Fields*, 277 F.3d at 1214 (citation omitted).

was ten years, and that she was satisfied with the advice and representation her attorney provided her.[88]  She also stated that she agreed that, if the case went to trial, the government would present evidence as described in detail by the prosecutor.  Had Petitioner misunderstood or been misinformed about the nature of the evidence against her, this Court's colloquy would have alerted her to that fact.  Moreover, after she entered her guilty plea and then moved to withdraw counsel, she does not claim that she told new counsel or raised the issue with this Court about previous counsel's actions nor sought to withdraw her plea on those grounds.

Accordingly, the Court finds that Petitioner has not demonstrated that counsel's purported ineffectiveness rendered her guilty plea involuntary.  This claim is denied.

## C.    Actual Innocence

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency."[89]  To establish actual innocence, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted [her] in light of . . . new evidence."[90]  To be credible, a claim of actual innocence ordinarily must be supported with new reliable evidence such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.[91]  Because such evidence is unavailable in the majority of cases, claims of actual innocence are rarely successful.[92]  In addressing a petitioner's claim that she is actually innocent of a charge to which she has pleaded guilty, petitioner must overcome the hurdle presented by her admission

---

[88] *Id.* at 13, 22.

[89] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[90] *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see United States v. Starr*, 275 F. App'x 788, 789 (10th Cir. 2008); *see also Bousley*, 523 U.S. at 623 (applying *Schlup* standard to § 2255 motion).

[91] *See Schlup*, 513 U.S. at 324.

[92] *Id.* at 324.

that her plea was knowing and voluntary and that she was guilty of the crime to which she pleaded guilty.[93]

Here, Petitioner fails to present any evidence that she is innocent of the crimes to which she pleaded guilty.  She claims that testimony from hospital staff, her text messages to Jordan, and documented abuse is exculpatory evidence that, if presented to a reasonable juror, supports her claim of evidence.  But this evidence falls short of proving that she did not aid and abet the armed bank robbery or the discharge of a firearm during the flight from that robbery.  Indeed, Petitioner admitted that she agreed to join Jordan while committing a robbery, that she drove her vehicle and her 19-month-old daughter to the bank, that she cased the bank, and that she directed Jordan to drive into Missouri in order to avoid apprehension by Kansas law enforcement officers. Moreover, Petitioner acknowledged to this Court, both orally and in writing, that she committed the offenses.  Because Petitioner has not met her burden to present credible new evidence of actual innocence, this claim is denied.

## III.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[94]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it

---

[93] *See O'Bryant v. Oklahoma*, 568 F. App'x 632, 637 (10th Cir. 2014) (In addressing an actual innocence claim, the court "may take into account the fact that the petitioner's conviction was based on a guilty plea predicated on the petitioner's representations of competence and voluntariness, and findings by the court.").

[94] 28 U.S.C. § 2253(c)(2).

debatable whether the district court was correct in its procedural ruling' *and* (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[95]  For the reasons stated above, the Court finds that Petitioner has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling dismissing her intentional-intrusion Sixth Amendment claim as well as on the merits of her § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Danille Morris' Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255, as amended (Docs. 137, 151) is **dismissed** with respect to her Sixth Amendment intentional-intrusion claim, and **denied** with respect to her ineffective assistance of counsel and actual innocence claims.  Petitioner is also denied a COA.

**IT IS SO ORDERED**.

Dated: September 19, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[95] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).