**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**Case No. 16-20022-3**

**DANILLE MORRIS,**

**Defendant.**

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Danille Morris' pro se Motion for Compassionate Release (Doc. 232) pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court denies Defendant's motion for compassionate release.

## I. Background

On August 8, 2016, Defendant pled guilty without a plea agreement to Counts 1 and 2 of the Superseding Indictment, charging her with armed bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d); and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A).[1] On March 27, 2017, the Court sentenced Defendant to a 200-month term of imprisonment followed by a three-year term of supervised release.[2] The Tenth Circuit affirmed Defendant's sentence.[3]

On July 28, 2020, Morris filed her first motion requesting compassionate release based on her prison living conditions during the COVID-19 pandemic, and based on her health

[1] Doc. 48.

[2] Doc. 104.

[3] *United States v. Morris*, 713 F. App'x 777 (10th Cir. 2017).

condition—a heart murmur and irregular heartbeat—because she could not see her cardiologist while in prison under those COVID-19 restrictions.[4] The Court denied that motion, finding that her medical condition was not sufficiently serious even when coupled with the COVID-19 pandemic, to constitute an extraordinary and compelling circumstance that warrants compassionate release.[5]

Plaintiff filed a second motion for compassionate release on May 25, 2023, on the basis that she was needed to take care of her ailing father, and also cited her own inadequate medical care in prison.[6] The Court dismissed that motion because Defendant failed to exhaust her administrative remedies before filing.[7]

Defendant is currently incarcerated at FCI Pekin in Illinois. She is scheduled for release on June 19, 2030. Defendant states that she has a "viable re-entry plan, a home in which to live, and access to medical and mental healthcare" if granted compassionate release.[8]

## II. Legal Standards

Defendant moves a third time for compassionate release on the same grounds asserted in her second motion, but this time she submits proof of exhaustion.[9] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[10] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from

---

[4] Doc. 189.

[5] Doc. 190.

[6] Doc. 193.

[7] Doc. 207.

[8] Doc. 232 at 1.

[9] *Id.* at 2.

[10] Pub. L. No. 115-391, 132 Stat. 5194.

the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons warrant" a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[11] The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[12] If the Court grants the motion, however, it must address all three steps.[13]

**A. Exhaustion**

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[14] Defendant attached to her motion her administrative request to the Warden for compassionate release. The Court is satisfied that Defendant exhausted her administrative rights to appeal and proceeds to the merits.

**B. Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant" a sentence reduction before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[15] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with

[11] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[12] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[13] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[14] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[15] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

applicable policy statements issued by the Sentencing Commission."[16] On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reductions filed by either the Director of the Bureau of Prisons or a defendant."[17] The policy statement lists grounds that constitute extraordinary and compelling circumstances, and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence."[18] Construing Defendant's pro se motion liberally, as the Court must,[19] she asserts that family circumstances and her own medial circumstances constitute extraordinary and compelling circumstances that justify compassionate release.

**1. Defendant's Medical Condition**

As for Defendant's own medical condition, she fails to explain how her situation has changed since the Court's first denial of compassionate release on these grounds. The Court found at the time that her symptoms do not rise to the level of a medical condition that places her at increased risk of serious illness or death from COVID-19. In this motion, Defendant does not rely on COVID-19 risk; instead, she simply states that she "cannot get the proper medical care" while in custody.[20]

---

[16] *Id.* at 832, 836–37.

[17] *United States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024).

[18] U.S.S.G. § 1B1.13(b).

[19] *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[B]ecause [defendant] appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

[20] Doc. 232 at 1.

Under U.S.S.G. § 1B.13(b)(1)(B) and (C), the Court may find extraordinary and compelling circumstances present if:

> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.[21]

Plaintiff has not made a showing that she meets the criteria under the policy statement based on her heart murmur; there is no indication that her heart murmur substantially diminishes her ability to provide self-care, or that she requires specialized care. The Court cannot find that extraordinary and compelling circumstances exist under the statute, nor that they would be supported under subsections (b)(1)(B) or (C) of the policy statement.

**2. Family Circumstances**

Next, Defendant urges that her father suffers from mini-strokes, dementia, and a disease called "White Matters," and requires around-the-clock care. She indicates that her uncle previously cared for her father, but he has suffered is own health issues recently and can no longer care for him. Defendant maintains she is the only family member able to care for them both. Under U.S.S.G. § 1B1.13(b)(3)(C), "[t]he incapacitation of the defendant's parent when

[21] U.S.S.G. § 1B.13(b)(1)(B)–(C).

the defendant would be the only available caregiver for the parent" may be an extraordinary and compelling reason for compassionate release. But the Court cannot find that Defendant's father is so ill that he is unable to care for himself, nor that Defendant is the only available caregiver based on Defendant's conclusory statement in the motion. The PSR indicates that Defendant has two paternal half-sisters, one of whom resides in Kansas City, and Defendant wholly fails to explain how they are unable to help care for their father.

To the extent Defendant argues that she should be released to help care for her uncle, the policy statement does not contemplate this as the type of family circumstance that is extraordinary and compelling. The guideline applies only to relationships "similar in kind" to an immediate family member such as a parent, child, or sibling. Defendant has not established that her relationship with her uncle is similar in kind to these relationships, nor that she is the only possible caregiver for him.

**C. Section 3553(a) Factors**

Assuming, arguendo, that Defendant could demonstrate extraordinary and compelling circumstances for compassionate release, the Court next considers the factors set forth in § 3553(a) in light of post-sentencing developments.[22] Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to

[22] *See Concepcion v. United States*, 597 U.S. 481, 486 (2022) ("[A] district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion."); *Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that evidence of post-sentencing conduct "may be highly relevant" under § 3553(a)).

protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[23] "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[24]

The Court has considered these factors and finds that they weigh against compassionate release, even if Defendant was able to show extraordinary and compelling circumstances. This was a serious, dangerous, and violent offense. Highly summarized, on March 9, 2016, co-defendant Gary Jordan asked Defendant to be his getaway driver for a bank robbery. Defendant drove her 2003 Chevy Tahoe to pick up Jordan and co-defendant Jacob Smith, bringing along her 19-month-old daughter. Defendant drove while Jordan and Smith looked for a target, and ended up at the bank in Stillwell, Kansas. Defendant "cased" the bank by going inside and pretending to be interested in a job. She then left the bank and relayed how many employees were working inside the bank to Jordan and Smith. Jordan and Smith entered the bank and confronted two tellers with handguns and took approximately $15,440 in cash from the tellers while Defendant waited with the Tahoe running. After the robbery, Jordan drove the Tahoe while Defendant and Smith began putting the money into a backpack. Law enforcement officers located the Tahoe a short time after the bank robbery and initiated a high-speed vehicle pursuit for approximately 21 miles, during which Smith fired numerous shots at law enforcement from the rear seat, striking a patrol car near the driver's door. Believing that law enforcement could not cross state lines, Defendant told Jordan to head for Missouri. The three were apprehended after Jordan lost control and wrecked the Tahoe attempting to avoid officers in Kansas City,

---

[23] 18 U.S.C. § 3553(a).

[24] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

Missouri. Defendant was located in the front passenger seat, and her child was in a car seat in the seat directly behind her. Jordan ran from the Tahoe and tried to carjack another vehicle before being apprehended.

Defendant's sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of Defendant. Thus, the Court would not find that the § 3553(a) factors support compassionate release, even if extraordinary and compelling circumstances were present.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Danille Morris' Third Motion for Compassionate Release (Doc. 232) is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 9, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE