## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:16-CR-20022-3-JAR** |
| **DANILLE MORRIS,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Danille Morris's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2) (Doc. 238). The motion is fully briefed, and the Court is prepared to rule. For the reasons discussed below, the Court grants Defendant's motion.

## I.    Facts

Highly summarized, Defendant was involved in a bank robbery with her two codefendants. Her involvement in the offense included supplying the getaway vehicle, casing the bank before the robbery to determine how many employees were inside, and telling her codefendant who was driving the getaway vehicle to head towards Missouri because Defendant believed the officers following them could not cross state lines. The offense involved a high-speed police chase, during which Defendant's codefendants fired shots at police officers. The chase resulted in the getaway vehicle losing control and rolling off the roadway. One of the codefendants attempted to steal a pedestrian's vehicle before being caught and placed into handcuffs. It is worth noting that Defendant's 19-month-old daughter was in the getaway vehicle during the bank robbery and the subsequent high-speed police chase.

On August 8, 2016, Defendant pled guilty without a plea agreement to Counts 1 and 2 of the Superseding Indictment, charging her with armed bank robbery in violation of 18 U.S.C.

§§ 2113(a) and 2113(d); and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).[1]

The Presentence Investigation Report calculated a criminal history score of zero, which established a criminal history category of I.[2]  Defendant's total offense level was calculated at 27 and included enhancements for discharging a firearm, assaulting an officer in a manner creating a substantial risk of serious bodily injury, and attempting to take a motor vehicle from someone by force and violence or intimidation.[3]  These enhancements were not based on Defendant's conduct; they were based on her codefendants' conduct during the offense.  Based on a criminal history category of I and a total offense level of 27, Defendant's guideline range for Count 1 was calculated at 70–87 months.[4]  The guideline sentence for Count 2 was the mandatory minimum statutory sentence of 120 months, which was required to be imposed consecutively to any other term of imprisonment.[5]

On March 27, 2017, the Court imposed a within-guidelines sentence of 80 months on Count 1 and 120 months, to be served consecutively to Count 1, on Count 2, for a controlling sentence of 200 months' imprisonment.[6]  The Tenth Circuit affirmed Defendant's sentence.[7]  Defendant subsequently filed three motions for compassionate release, all of which were either denied or dismissed by the Court.[8]

---

[1] Doc. 48.

[2] *See* PSR, Doc. 90 ¶ 62.

[3] *Id.* at ¶ 46–57.

[4] *Id.* ¶ 90.

[5] *Id.*; *see also* 18 U.S.C. § 924(c)(1)(A)(iii).

[6] Doc. 103.

[7] *United States v. Morris*, 713 F. App'x 777 (10th Cir. 2017).

[8] Docs. 190, 207, 236.

On February 18, 2025, Defendant filed the instant motion seeking a reduction in her sentence based on the fact that she is a "Zero-Point Offender."[9]

## II.    Standard

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."[10]  Section 3582 allows for a possible sentence reduction for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."[11]

Additionally, the Sentencing Commission amended the United States Sentencing Guidelines effective November 1, 2023.[12]  Part A of Amendment 821 limits the criminal history impact of "status points," and Subpart 1 of Part B of Amendment 821 creates a new guideline, § 4C1.1, that provides for a decrease of two offense levels for "Zero-Point Offenders."[13]  With respect to the guideline for Zero-Point Offenders, a defendant is eligible for a two-level reduction in his or her offense level if he or she meets all the following criteria:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;

---

[9] Doc. 238.

[10] *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997).

[11] *See* 18 U.S.C. § 3582(c)(2).

[12] U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2023).

[13] U.S. Sent'g Guidelines Manual app. C Supp., amend. 821 (U.S. Sent'g Comm'n 2023).

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 . . . ."[14]

Lastly, a court may only reduce a defendant's term of imprisonment after considering the factors set forth in section 3553(a) to the extent that they are applicable.[15]  Those factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

## III.    Discussion

### A.  U.S.S.G. Section 4C1.1

Defendant's motion seeks a sentence reduction based on Amendment 821 to the United States Sentencing Guidelines pursuant to § 3582(c)(2).  As noted, Defendant maintains that she was assigned no criminal history points and that, accordingly, she is a Zero-Point Offender entitled to a decrease of two offense levels.  The Government responds that Defendant is not

---

[14] *See* U.S.S.G. § 4C1.1(a).

[15] 18 U.S.C. § 3582(c)(2).

eligible for the two-level reduction because she does not meet the criteria of U.S.S.G. § 4C1.1(a). Specifically, the Government argues that Defendant does not satisfy § 4C1.1(a)(3) because the offense for which she was convicted involved the use of violence and fails to satisfy § 4C1.1(a)(7) because she possessed a firearm in furtherance of the offense. Defendant contends that these sections do not exclude her from the two-level reduction because she did not personally use violence or credible threats of violence and did not personally possess a firearm in furtherance of the offense; that conduct was attributable to her codefendants. Thus, the issue is whether a defendant fails to satisfy the requirements of §§ 4C1.1(a)(3) and (a)(7) even if he or she did not personally engage in the prohibited conduct. The Court agrees with Defendant that §§ 4C1.1(a)(3) and (a)(7) consider only the defendant's personal conduct and do not consider the conduct of his or her codefendants or the offense generally.

"The guidelines must be interpreted as if they were a statute or a court rule. As with statutory interpretations, our analysis must begin with the language of the guidelines in question."[16] U.S.S.G. § 4C1.1(a)(3) states that a defendant is only eligible for the two-level Zero-Point Offender reduction if "the defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(7) states that a defendant is only eligible for the reduction if "the defendant did not possess . . . a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." By using the phrase "*the defendant* did not," the Sentencing Commission plainly instructs courts to look at the defendant's conduct, not the conduct of his or her codefendants. Defendant reasons, and the Court agrees, that when the Sentencing Commission wants courts to consider the conduct of codefendants or the offense generally, it uses language such as "the offense did not" (e.g.,

---

[16] *United States v. Smith*, 900 F.2d 1442, 1446 (10th Cir. 1990) (citations omitted).

U.S.S.G. § 4C1.1(a)(4)) and "the instant offense of conviction is not" (e.g., U.S.S.G.
§ 4C1.1(a)(5)).

Moreover, "similar language in similar statutes should be interpreted similarly."[17]
U.S.S.G. § 5C1.2 provides that a defendant is eligible if "the defendant did not use violence or
credible threats of violence or possess a firearm or other dangerous weapon (or induce another
participant to do so) in connection with the offense."[18]  The Tenth Circuit, in interpreting
§ 5C1.2, explained that when a guideline uses active voice such as "the defendant did not use,"
courts "focus on the defendant's own conduct for purposes of evaluating eligibility . . . [and]
recognize a distinction between constructive and actual possession."[19]  In contrast, the Tenth
Circuit explained that when a guideline uses passive voice, such as "was possessed," courts
require a lesser degree of connection between a defendant and the weapon.[20]  U.S.S.G.
§§ 4C1.1(a)(3) and (a)(7) should be interpreted similarly to § 5C1.2.

The Government argues that if the Sentencing Commission wanted courts to look at only
the defendant's conduct when considering §§ 4C1.1(a)(3) and (a)(7), it would have included the
word "personally" as it does in § 4C1.1(a)(6).  U.S.S.G. 4C1.1(a)(6) states that a defendant is
only eligible for the Zero-Point Offender reduction if "the defendant did not *personally* cause
substantial financial hardship."  The Government reasons that Defendant's interpretation of
§ 4C1.1(a) would render the word "personally" meaningless if courts are limited to considering
only the defendant's personal conduct regardless of whether the word "personally" is included.

---

[17] *See Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1308 (10th Cir. 2023) (quoting *Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 930, 937 (9th Cir. 2022)).

[18] U.S.S.G. § 5C1.2(a)(2).

[19] *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1186 (10th Cir. 2004) (discussing U.S.S.G. § 5C1.2(a)(2)).

[20] *Id.* at 1186–87 (discussing U.S.S.G. § 2D1.1(b)(1).

But as Defendant notes, § 4C1.1(a)(6)—unlike §§ 4C1.1(a)(3) and (a)(7)—focuses on causation, not on any particular conduct the defendant engaged in.  Causing substantial financial hardship, unlike using violence or credible threats of violence or possessing a firearm, often requires more than one person, each performing one or more acts that ultimately cause the financial hardship.  And by excluding only those defendants who "*personally* caused" the financial hardship, the Sentencing Commission ensures that defendants who acted as "middleman" or had minor links in the causation chain, are still eligible for the two-offense level reduction.[21]  Accordingly, Defendant's interpretation of § 4C1.1(a) does not render the word "personally" meaningless in § 4C1.1(a)(6).  That section deals with causation, an entirely different concept than §§ 4C1.1(a)(3) and (a)(7) which deal with a defendant's conduct.

Thus, Defendant satisfies § 4C1.1(a)'s requirements and is entitled to a two-level reduction in her offense level.  With the two-level reduction, Defendant's new guidelines range for Count 1 is 57–71 months.

### B.  Section 3553(a) Factors

Next, the Court must consider the factors set forth in section 3553(a) to determine whether a sentence reduction is warranted.  The Government argues that the factors weigh against reducing Defendant's sentence for the same reason the Court concluded they weighed against granting Defendant's motion for compassionate release.  However, the Government ignores the distinction between a motion for sentence reduction and a motion for compassionate

---

[21] *See, e.g.*, *United States v. Daramola*, No. 20-2124, 2024 WL 4241840, at *5 (D.N.M. Sept. 19, 2024) ("Ultimately, the Court finds that defendants personally cause substantial financial hardship only when they are directly involved in defrauding the victim, not when they act as middlemen in a fraudulent conspiracy."); *United States v. Elendu*, No. 20 CR 179-14, 2024 WL 458643, at *3 (S.D.N.Y. Feb. 6, 2024) ("[I]t is assumed that his money laundering activity as a member of a conspiracy that defrauded individuals and businesses would not disqualify him since he did not 'personally cause' substantial financial hardship to the victims of the fraud in which he participated."); *cf. United States v. Bentley*, No. H-22-400, 2024 WL 3796181, at *1 (S.D. Tex. Aug. 13, 2024) ("Defendant's *personal* actions in defrauding his investors caused substantial financial hardship . . . ." (emphasis added)).

release.  The Court can (and does) find that the factors weigh against granting Defendant immediate release, reducing her sentence by more than five years, while also finding that the factors weigh in favor of reducing her sentence by less than two years.

The nature and circumstances of the offense were egregious, most notably Defendant's decision to bring her 19-month-old child.  But at sentencing, the Court concluded that a sentence around the midpoint of the guideline range was appropriate for Count 1.  Because Amendment 821 reduced Defendant's guideline range for Count 1, Defendant would effectively be serving an above-guideline sentence if the Court did not grant her motion for a sentence reduction. Therefore, the Court will reduce Defendant's sentence for Count 1 to 65 months' imprisonment, a proportional reduction from the Court's original within-guideline sentence.  Defendant's sentence for Count 2 remains unchanged.  Thus, her new controlling sentence is 185 months' imprisonment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2) (Doc. 238) is **granted**.

**IT IS FURTHER ORDERED** that Defendant's sentence for Count 1 be reduced from 80 months to 65 months.  Her new controlling sentence is 185 months' imprisonment.

**IT IS SO ORDERED.**

Dated: May 22, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE